IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIETZ & WATSON, INC. | : | CIVIL ACTION |
| v. | : | |
| LIBERTY MUTUAL INSURANCE COMPANY and LIBERTY MUTUAL FIRE INSURANCE COMPANY | : : | NO. 14-4082 |

<u>MEMORANDUM OF DECISION</u>

THOMAS J. RUETER                                                                               January 28, 2015
United States Magistrate Judge

      Presently before the court are seven discovery motions filed by the parties in the above captioned case which were referred to the undersigned for disposition by the Honorable Jan E. DuBois (Doc. No. 22). The court granted one motion, Document No. 17, as unopposed. On January 14, 2015, the court heard oral argument on the remaining six motions, Document Nos. 14, 15, 16, 18, 19 and 21. This Memorandum of Decision sets forth the court's rulings on these motions.

**I.    BACKGROUND**

      This is an action for bad faith under Pennsylvania law, 42 Pa. Cons. Stat. Ann. § 8371 (West 2014), filed by plaintiff Dietz & Watson, Inc. ("D&W") against defendants Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company (collectively referred to hereinafter as "Liberty"). The case stems from an underlying state court action (the "Underlying Action") wherein an individual named Javier Fernandez sued D&W and another defendant for damages relating to a work place injury. Liberty provided insurance coverage to D&W for the claim and provided a defense in the Underlying Action under a reservation of rights letter.

Liberty reserved rights to disclaim coverage on a claim for punitive damages.  At the start of the trial in state court in September 2013, Mr. Fernandez settled his claims against D&W for $2.5 million, which consisted of a payment of $1,750,000 from Liberty and $750,000 from D&W.  At the time of the settlement, Mr. Fernandez was represented by the law firm of Villari Lentz & Lynam, LLC, counsel to D&W in the present litigation.  At first, Liberty retained John Baginski, Esquire and, later, David White, Esquire to represent D&W in the Underlying Action.  D&W's "corporate counsel," Alan Milstein, Esquire, also later entered an appearance on behalf of D&W.  (N.T., 1/14/15, at 16-17.)  At the time of the settlement, counsel for D&W, Mr. Milstein, reached an agreement with Mr. Fernandez's counsel, Messrs. Lynam and Villari, whereby they would represent D&W in a bad faith action against Liberty and Mr. Fernandez would recover the first $250,000 from any monies recovered from Liberty in the bad faith action.  Furthermore, at the time of the settlement, Mr. Fernandez withdrew his claim for punitive damages against D&W.

In this bad faith action, plaintiff's "primary claim is that Liberty failed to engage in good faith settlement negotiations in the Fernandez action."  (Pl.'s Mot. to Compel (Doc. No. 14) at 2.)  In particular, D&W alleges that Liberty unreasonably refused to pay more than $1,750,000 to settle the Underlying Action and thereby forced D&W to use its own monies to complete the settlement.  In addition, D&W claims that Liberty "acted in bad faith following settlement of the Fernandez action by obstructing D&W from investigating and pursuing its bad faith claims."  Id.

## II.     DISCOVERY MOTIONS

### 1. D&W's Motion to Compel Production of Documents and/or Request for an in Camera Review of Liberty's Claims of Privilege (Doc. No. 14) and Liberty's Response (Doc. No. 23)

D&W requests the court to compel production of the following documents from Liberty:  (1) certain documents withheld as mediation documents or communications pursuant to 42 Pa. Cons. Stat. Ann. § 5949; (2) certain documents withheld because they are protected by the attorney-client privilege or constitute work product; and (3) the litigation files of Liberty and its attorneys relating to the defense of the Underlying Action.  For the reasons stated below, this Motion is **GRANTED IN PART** and **DENIED IN PART**.

#### a.     Mediation Privilege

"[W]ith the great increase in recent years in the use of alternative dispute resolution in general and mediation in particular, all states have enacted statutes or rules designed to protect mediation communications from disclosure in legal proceedings."  Jay M. Zitter, Construction and Application of State Mediation Privilege, 32 A.L.R.6th 285, at § 2 (2008).  One commentator has explained why there is such universal acceptance of the mediation privilege:

> Having no coercive power, a mediator is dependent upon increasing communication, if not trust, between disputants.  The willingness of mediation parties to "open up" is essential to the success of the process.
>
> The mediation process is purposefully informal to encourage a broad ranging discussion of facts, feelings, issues, underlying interests and possible solutions to the parties' conflict.  Mediation's private setting invites parties to speak openly, with complete candor.  In addition, mediators often hold private meetings – "caucuses" – with each of the parties.  More overt assurances of confidentiality are common.  Mediators regularly require all present to promise to keep mediation discussions confidential, and routinely assure participants that the proceedings are confidential (whether or not legal protection is certain).

> Under such circumstances, mediation parties often reveal personal and business secrets, share deep-seated feelings about others, and make admissions of fact and law. Without adequate legal protection, a party's candor in mediation might well be "rewarded" by a discovery request or the revelation of mediation information at trial. A principal purpose of the mediation privilege is to provide mediation parties protection against these downside risks of a failed mediation. Participation will diminish if perceptions of confidentiality are not matched by reality. Another critical purpose of the privilege is to maintain the public's perception that individual mediators and the mediation process are neutral and unbiased.

Alan Kirtley, The Mediation Privilege's Transition from Theory to Implementation: Designing a Mediation Privilege Standard to Protect Mediation Participants, The Process and The Public Interest, 1995 J. Disp. Resol. *1, *8-10 (1995) (footnotes omitted) ("Kirtley").

The parties agree that Pennsylvania's mediation privilege, 42 Pa. Cons. Stat. Ann. § 5949, which covers confidential mediation communications and documents, governs this proceeding. See Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.").[1] See also In re Ford Motor Co., 110 F.3d 954, 965 (3d Cir. 1997) (quoting Fed. R. Evid. 501) (abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100 (2009)); Samuelson v. Susen, 576 F.2d 546, 549-50 (3d Cir. 1978) (same). In pertinent part, Pennsylvania's mediation privilege states as follows:

> 42 Pa.C.S.A. § 5949. Confidential mediation communications and documents
>
> (a) General rule.– Except as provided in subsection (b), all mediation communications and mediation documents are privileged. Disclosure of mediation communications and mediation documents may not be required or

---

[1] This is true even if the privilege provided by state law would bar evidence otherwise admissible under the Federal Rule of Evidence 408. See Athey v. Farmers Ins. Exch., 234 F.3d 357, 362 (8th Cir. 2000) (finding evidence of settlement offer by insurer was properly admitted to prove insurer's bad faith).

compelled through discovery or any other process.  Mediation communications and mediation documents shall not be admissible as evidence in any action or proceeding, including, but not limited to, a judicial, administrative or arbitration action or proceeding.

(b) Exceptions.–
(1)  A settlement document may be introduced in an action or proceeding to enforce the settlement agreement expressed in the document, unless the settlement document by its terms states that it is unenforceable or not intended to be legally binding.
. . .
(4)  Any document which otherwise exists, or existed independent of the mediation and is not otherwise covered by this section, is not subject to this privilege.

(c) Definitions.–  . . .
"Mediation."  The deliberate and knowing use of a third person by disputing parties to help them reach a resolution of their dispute.  For purposes of this section, mediation commences at the time of initial contact with a mediator or mediation program.
"Mediation communication."  A communication, verbal or nonverbal, oral or written, made by, between or among a party, mediator, mediation program or any other person present to further the mediation process when the communication occurs during a mediation session or outside a session when made to or by the mediator or mediation program.
"Mediation document."  Written material, including copies, prepared for the purpose of, in the course of or pursuant to mediation.  The term includes, but is not limited to, memoranda, notes, files, records and work product of a mediator, mediation program or party.
"Mediation program."  A plan or organization through which mediators or mediation may be provided.
"Mediator."–  A person who performs mediation.

42 Pa. Cons. Stat. Ann. § 5949.  As a general rule, the party asserting the privilege, Liberty in this case, has the burden of establishing that it applies.  United States Fid. & Guar. Co. v. Dick Corp., 215 F.R.D. 503, 506 (W.D. Pa. 2003).  Moreover, because "[t]estimonial exclusionary rules and privileges contravene the fundamental principle that the public . . . has a right to every man's evidence," they must be strictly construed.  Commonwealth v. Spetzer, 813 A.2d 707, 717

(Pa. 2002) (quoting Trammel v. United States, 445 U.S. 40, 50-51 (1980)) (quotation omitted). See also United States v. Bowman, 358 F.2d 421, 423 (3d Cir. 1966) (same).

During the Underlying Action, there were several mediation sessions with privately paid mediators, trial judges, and an attorney appointed by the court:

| | |
|---|---|
| **First Mediation:** | March 19, 2013 before Philadelphia Judge Pro Tempore Edward F. Chacker, Esquire attended by representatives of all parties. |
| **Second Mediation:** | May 9, 2013 private mediation before the Honorable Diane M. Welsh (Ret.) attended by representatives of all parties. |
| **Third Mediation:** | July 12, 2013 before the Honorable Sandra Mazer Moss attended by representatives of all parties. |
| **Fourth Mediation:** | August 8, 2013 private mediation before Peter A. Dunn, Esquire. D&W did not participate in this mediation. |
| **Fifth Mediation:** | September 10, 2013 before the Honorable John M. Younge attended by representatives of all parties. |

(Compl. ¶¶ 33, 37-39, 45, 48-49, 54.)  The court finds that all but the fourth mediation session are covered by Pennsylvania's mediation privilege statute since they involved "[t]he deliberate and knowing use of a third person by disputing parties to help them reach a resolution of their dispute." 42 Pa. Cons. Stat. Ann. § 5949(c).  The statute does not apply to the fourth mediation session because Liberty did not participate in that session as it solely involved Mr. Fernandez's claims against D&W's co-defendant in the Underlying Action.[2]  (N.T., 1/14/15, at 34-35.)

---

[2]     At the January 14, 2015 oral argument on the discovery motions, D&W argued that only the second mediation session, on May 9, 2013 before Judge Welsh, was a "mediation" covered by the statute.  D&W urged, inter alia, that the first, third and fifth mediation sessions either were not voluntary, and/or that the parties were not in a mediation "mindset," and/or that the session was attended by associates and not trial counsel.  This is inconsistent with the position asserted by D&W and its counsel in the Complaint initiating this matter.  In the Complaint, D&W identified the first mediation session as a "settlement conference" at which the mediator placed a verdict range on the case.  (Compl. ¶ 33.)  In the Complaint, D&W also identified the third mediation session as a "settlement conference" at which the mediator valued the case "for settlement purposes." Id. ¶ 45.  Finally, D&W identified the fifth mediation conference in the Complaint as a "settlement conference." Id. ¶ 54.

6

D&W seeks all documents relating to communications during those mediation sessions. The parties do not dispute that Liberty's correspondence and claim notes reflecting communications made during those medication sessions are relevant to D&W's claim that Liberty failed to engage in good faith settlement negotiations in the Underlying Action. However, the plain language of 42 Pa. Cons. Stat. Ann. § 5949, bars the use of this evidence "in any action or proceeding, including, but not limited to, a judicial, administrative or arbitration action or proceeding." 42 Pa. Cons. Stat. Ann. § 5949(a). While the statute enumerates limited exceptions, see § 5949(b), none of these exceptions apply here. Specifically, the court rejects D&W's assertion that the mediation privilege does not apply in a bad faith action alleging an insurer's failure to engage in good faith settlement negotiations.

There is a strong policy in Pennsylvania for keeping mediation communications and documents confidential. One court articulated these reasons as follows:

> If participants cannot rely on the confidential treatment of everything that transpires during [mediation] sessions then counsel of necessity will feel constrained to conduct themselves in a cautious, tightlipped, non-committal manner more suitable to poker players in a high-stakes game than to adversaries attempting to arrive at a just resolution of a civil dispute. This atmosphere if allowed to exist would surely destroy the effectiveness of the program which has led to settlements . . ., thereby expediting cases at a time when . . . judicial resources . . . are sorely taxed.

United States Fid. & Guar. Co. v. Bilt-Rite Contractors, Inc., 2005 WL 1168374, at *5 n.10 (E.D. Pa. May 16, 2005) (quoting Lake Utopia Paper Ltd. v. Connelly Containers, Inc., 608 F.2d 928, 930 (2d Cir. 1979)).

The mediation privilege extends not only to mediation communications of parties, but also to communications "by, between or among" representatives of insurance companies

present at the mediation. See 42 Pa. Cons. Stat. Ann. § 5949(c) (defining "Mediation communication" as "A communication, verbal or nonverbal, oral or written, made by, between or among a party, mediator, mediation program <u>or any other person present to further the mediation process</u> when the communication occurs during a mediation session or outside a session when made to or by the mediator or mediation program.") (emphasis added). See also <u>Exec. Risk Indem., Inc. v. Cigna Corp.</u>, 2006 WL 2439733, at *9 (Pa. Com. Pl. Aug. 18, 2006) (same). Finding that the mediation privilege applies to participating insurance companies' representatives is essential to the success of the mediation sessions. Frequently, adjustors or representatives of insurance companies attend mediation sessions. Indeed, many mediators require their presence, either in person or by telephone. See, e.g., <u>Lockhart v. Patel</u>, 115 F.R.D. 44, 46-47 (E.D. Ky. 1987) (imposing sanctions for failure of insurance representative to attend settlement conference). For mediation sessions to be fruitful, insurance adjustors and representatives must be free to discuss candidly any offers and proposals without fear that such communications may be used against them in future litigation.

   D&W argues that Pennsylvania's mediation privilege should apply only "in connection with the prosecution and trial of the underlying claim" that was mediated. (D&W Letter Br. ("D&W Letter Br.") dated Jan. 12, 2015 at 4 (quoting <u>Aetna, Inc. v. Lexington Ins. Co.</u>, 2005 WL 2840327, at *5 (Pa. Com. Pl. Oct. 27, 2005))). At oral argument, counsel for D&W clarified this argument and stated that because the underlying claim is a personal injury claim, the mediation communications relating to that claim should be admissible in a proceeding on a different claim, i.e., a bad faith claim against an insurer. D&W argues that allowing it to use confidential mediation communications from the Underlying Action would promote the goal of

inhibiting insurance companies from engaging in bad faith settlement negotiations. Liberty responds by citing contravening policy concerns; namely, if confidential mediation communications are admissible in a subsequent bad faith action, insurers would be reluctant to engage in candid discussions during mediation sessions which would substantially impair the effectiveness of these sessions, and threaten Pennsylvania's strong policy that favors settlement of lawsuits. See Step Plan Servs., Inc. v. Koresko, 12 A.3d 401, 408-09 (Pa. Super. Ct. 2010) ("The law of this Commonwealth establishes that an agreement to settle legal disputes between parties is favored. There is a strong judicial policy in favor of voluntarily settling lawsuits because it reduces the burden on the courts and expedites the transfer of money into the hands of a complainant.").

        This court rejects D&W's interpretation of Pennsylvania's mediation privilege because it is contrary to the plain language of the statute. It is not the role of this court to ignore the language of the statute and weigh and choose between the parties' competing policy arguments. These policy decisions are for the legislature who presumably considered such competing policy arguments in deciding on the current language of 42 Pa. Cons. Stat. Ann. § 5949.[3] The duty of this court is to apply the plain language of the statute. As quoted above, 42

---

[3] For example, the legislature in North Carolina enacted a less broad mediation privilege, which provides a limitation more in line with D&W's argument and states as follows:

> Evidence of statements made and conduct occurring in a mediated settlement conference or other settlement proceeding conducted under this section, whether attributable to a party, the mediator, other neutral, or a neutral observer present at the settlement proceeding, shall not be subject to discovery and shall be inadmissable in any proceeding in the action or other civil actions on the same claim[.]

N.C. Gen. Stat. § 7A-38.1(l) (2010) (emphasis added). See Brown v. Nationwide Mut. Ins. Co.,

Pa. Cons. Stat. Ann. § 5949(a) states that "[m]ediation communications and mediation documents shall not be admissible as evidence in <u>any</u> action or proceeding." 42 Pa. Cons. Stat. Ann. § 5949(a) (emphasis added). The plain language of this section bars use of mediation communications in any and all actions or proceedings subject only to the exceptions outlined in the statute. A bad faith lawsuit is not one of the enumerated exceptions.[4]

The mediation privilege codified in 42 Pa. Cons. Stat. Ann. § 5949, however, is limited to communications "by, between or among" the mediator, parties and participants made during the mediation session, or communications made to the mediator or from the mediator outside a session. Thus, "discussions among parties outside the presence of the mediator and not

---

2015 WL 71485, at *3 (M.D. N.C. Jan. 6, 2015) (quoting statute). The Pennsylvania legislature could have enacted a similarly less broad version of the mediation privilege, but chose not to do so. Instead, Pennsylvania adopted a very broad prohibition against the use of mediation communications, similar to one urged by some legal scholars. See Kirtley, supra, at *13-14 ("A mediation privilege should be of broad unambiguous scope, bar discovery, and exclude evidence in all types of proceedings."). Pennsylvania's legislative decision represents its judgment that, on balance, the benefits of broadly protecting mediation communications are worth the price of the privilege. It is not this court's role to question this legislative decision.

[4]  Some general rules of construction enacted by the Pennsylvania legislature guide this court in the interpretation and application of Pennsylvania's mediation privilege. Words and phrases in Pennsylvania statutes are to "be construed according to rules of grammar and according to their common and approved usage." 1 Pa. Cons. Stat. Ann. § 1903. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. Cons. Stat. Ann. § 1921. Additionally, "[e]xceptions expressed in a statute shall be construed to exclude all others." 1 Pa. Cons. Stat. Ann. § 1924. See also In re Barshak, 106 F.3d 501, 506 (3d Cir. 1997) (stating that the court "is not free to ignore the clear language of a Pennsylvania statute," and holding that "[i]n the end, the case comes down to this: we rule on the basis of what the law is rather than what a party wishes it could be") (citing 1 Pa. Cons. Stat. Ann. § 1921(b) (1995)); Commonwealth v. Patchett, 425 A.2d 798, 800 (Pa. Super. Ct. 1981) (The court is "constrained . . . to give effect to the obvious meaning of clear and unambiguous statutory language. . .; when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded.") (citing 1 Pa. Cons. Stat. Ann. §§ 1903, 1921; case citations omitted).

occurring at a mediation proceeding are not privileged. Where the mediator has no direct involvement in the discussions and where the discussions were not designated by the parties to be a part of an ongoing mediation process, the rationale underlying the mediation privilege (i.e., that confidentiality will make the mediation more effective) is not implicated." United States Fid. & Guar. Co. v. Dick Corp., 215 F.R.D. at 506. See also Stewart Title Guar. Co. v. Owlett & Lewis, P.C., 297 F.R.D. 232, 239 (M.D. Pa. 2013) (report prepared for and used in mediation was privileged; expert report attached to mediation report that was prepared sixteen months before mediation and existed independent of the mediation was not privileged). Therefore, to the extent Liberty has responsive documents that reflect communications involving additional negotiations as to which the mediators had no involvement, they must be produced to D&W. Otherwise, Liberty's claim of mediation privilege is upheld.

### b. Attorney-Client Privilege/Work Product

Where, as here, the claims and defenses in issue arise under state law, "'Federal Rules of Evidence 501 and 1101(c) provide that [the Court] should apply state law in determining the extent and scope of the attorney-client privilege.'" CAMICO Mut. Ins. Co. v. Heffler, Radetich & Saitta, LLP, 2013 WL 315716, at *1 (E.D. Pa. Jan. 28, 2013) (DuBois, J.) (quoting Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 861-62 (3d Cir. 1994)). The parties do not dispute that the privilege rules of Pennsylvania apply to this case. In Pennsylvania, the attorney-client privilege generally provides: "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa. Cons. Stat. Ann. § 5928. "[I]n Pennsylvania, the

attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." Gillard v. AIG Ins. Co., 15 A.3d 44, 59 (Pa. 2011).

Under Pennsylvania law, when an insurer retains an attorney to represent an insured pursuant to the insurer's duty to defend, that attorney's client is the insured and "the insurer may be, but is not always, a co-client of the insured." CAMICO, 2013 WL 315716, at *5. Here, Liberty retained two attorneys to represent D&W in the Underlying Action, Mr. Baginski and Mr. White.  Clearly, when these attorneys communicated with Liberty regarding the defense of the Underlying Action, they acted as the attorneys for D&W, as well as Liberty.  In these communications, Liberty cannot claim the attorney-client privilege to prevent disclosure to D&W of these communications.  When an attorney represents both parties to a transaction, "no communications in relation to the common business are privileged in favor or against either, but only against a common adversary." Id. at *2 (quoting Tracy v. Tracy, 105 A.2d 122, 125 (Pa. 1954)) (internal quotation marks omitted).

Liberty claims, however, that there exists other distinct communications that in-house Liberty counsel (other than Mr. Baginski and Mr White) had with the insurer's employees that relate solely to insurance coverage issues and to a reservation of rights letter issued in March of 2013 (N.T., 1/14/15, at 44), and to D&W's threat of a bad faith claim against Liberty. Id. at 53-54.  In these communications, counsel would have been acting solely as counsel for Liberty since D&W and Liberty's positions on these issues were adverse to one another.

Conversely, the work product doctrine is governed by federal law at Fed. R. Civ. P. 26(b)(3).  See Borgia v. State Farm Mut. Auto. Ins. Co., 2014 WL 4375643, at *2 (E.D. Pa.

Sept. 3, 2014) (citing <u>United Coal Cos. v. Powell Constr. Co.</u>, 839 F.2d 958, 966 (3d Cir. 1988)). Under that standard, a party "[o]rdinarily . . . may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." <u>Id.</u> (quoting Fed. R. Civ. P. 26(b)(3)(A)). A document is prepared in anticipation of litigation when "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." <u>Id.</u> at *3 (quoting <u>In re Grand Jury Proceedings</u>, 604 F.2d 798, 803 (3d Cir. 1979)). It has generally been held that the work product doctrine applies to insurance companies confronted with a bad faith claim brought by an insured. A "mere claim of bad faith is not enough to shatter the work-product privilege." <u>Id.</u> (quoting <u>Robertson v. Allstate Ins. Co.</u>, 1999 WL 179754, at *3 (E.D. Pa. Mar. 10, 1999)). Courts recognize that "[a]t some point in its investigation, . . . an insurance company's activity shifts from mere claims evaluation to an anticipation of litigation." <u>Id.</u> (quotation omitted).

    Considering all of these principles, the court reaches the following conclusions. It is clear that any mediation communications and mediation documents not covered by 42 Pa. Cons. Stat. Ann. § 5949, as interpreted herein, are discoverable and Liberty must produce those documents. Liberty shall review its privilege log and ascertain whether it is in compliance with the court's conclusions stated in this Memorandum of Decision and accompanying order. If necessary, Liberty shall make a further production and/or amend its privilege log. To the extent, Liberty asserts the attorney-client privilege, or the work product doctrine to exclude production of documents created <u>prior</u> to the settlement of the Underlying Action in September 2013,

Liberty shall produce those documents to this court for in camera review within the time deadlines set forth in this court's accompanying order.[5]

### c.      Post Lawsuit Correspondence

This issue focuses on Liberty's refusal to turn over the Fernandez litigation file following settlement of the Underlying Action. (D&W's Letter Br. at 8-9.) At the oral argument, counsel for Liberty represented that, as of approximately February 2014, D&W had obtained the litigation files from Attorneys Baginski and White and, as of approximately July 2014, D&W had obtained the Liberty claims file with certain redactions for privileged materials. (N.T., 1/14/15, at 53-54, 62, 67, 72-73.)[6] Therefore, this request to compel production of these files is **DENIED AS MOOT**.

### 2.      D&W's Motion for Protective Order Pursuant to Federal Rule of Civil Procedure 26(c) (Doc. No. 15) and Liberty's Response (Doc. No. 24)

For the reasons set forth below, this Motion (Doc. No. 15) is **GRANTED IN PART** and **DENIED IN PART**. D&W filed this motion seeking to preclude the depositions of

---

[5]     Based on the court's interpretation of Pennsylvania's mediation privilege, the court finds no need to review documents in camera that were withheld on the basis of the mediation privilege. If D&W disagrees, it may make a written request to have the court review these documents, but it must support its request with specific reasons.

[6]     At oral argument, counsel for D&W emphasized that a file identified as the "Share Point file" was not produced by Liberty and that this file "is the biggest deal." (N.T., 1/14/15, at 73-74.) Counsel for Liberty represented that the Share Point file does not "actually have data on it." Id. at 74-75. After oral argument, Liberty submitted an email from Stephen C. Baker, Esquire, dated November 5, 2014, in which Mr. Baker stated that the Share Point file does not contain any documents but is a "cloud-based document sharing system into which documents from other locations (e.g. a claim file) are loaded for use." (Liberty Ltr. dated Jan. 16, 2015.) Mr. Baker's explanation is consistent with Liberty's response to D&W's second Request for Production in which Liberty represented that it had not located any Share Point entries regarding the Underlying Action. Id. The court accepts Liberty's representation that the Share Point file at issue contains no documents regarding the Underlying Action.

Mr. Fernandez, and of Thomas A. Lynam, Esquire and Leonard G. Villari, Esquire, Mr. Fernandez's counsel in the Underlying Action and D&W's counsel in the instant litigation. Liberty states that these depositions are necessary to prove several of Liberty's affirmative defenses to this action.  In their answer, Liberty, citing a provision of its policy which outlines the duties of the insured, states that D&W's actions should be barred because D&W "voluntarily made a payment, assumed an obligation, or incurred an expense without Liberty Mutual's consent."  (Third Affirmative Defense.)[7]  Considering policy language almost identical to that in the Liberty policy at issue in this matter, the court in Nationwide Mut. Fire Ins. Co. v. Nova Real Estate LLC, 2011 WL 721905 (E.D. Pa. Mar. 1, 2011), held that the insurance company had no obligation to pay a settlement obligation incurred voluntarily by the insured without the insurer's consent.  Id. at *8.  Furthermore, the court granted summary judgment on the insured's bad faith claim because the insurer had no obligation to pay the settlement amount.  Id.

Liberty also alleged that the complaint is barred by D&W's "unclean hands, and by its collusion with the plaintiff in the Underlying Lawsuit and with that plaintiff's attorney." (Tenth Affirmative Defense.)  Pennsylvania law applies "the duty to act in good faith to each party to an insurance contract, including the insured."  Jung v. Nationwide Mut. Fire Ins. Co., 949 F. Supp. 353, 360-61 (E.D. Pa. 1997) (quotation omitted).  Pennsylvania law requires that a settlement entered without the insurers' knowledge or consent must be reasonable and in good faith and non-collusive, even if the insurer breached its duty to defend.  Babcock & Wilcox Co. v. Am. Nuclear Insurers, 76 A.3d 1, 22 (Pa. Super. Ct. 2013).  "Among the indicators of [an

---

[7] The Liberty policy provides:  "No Insured will, except at that Insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."

insured's] bad faith and collusion are unreasonableness, misrepresentation, concealment, secretiveness, lack of serious negotiations on damages, attempts to affect the insurance coverage, profit to the insured, and attempts to harm the interest of the insurer." Cont'l Cas. Co. v. Westerfield, 961 F. Supp. 1502, 1505 (D.N.M. 1997) (quoting Stephen R. Schmidt, The Bad Faith Setup, 29 Tort & Ins. L. J. 705, 728 (1994)), affirmed, 74 F.App'x 703 (10th Cir. 2001). As evidence of collusion, Liberty points to the fact that at the time of the settlement, Mr. Fernandez withdrew his claim for punitive damages, so that it would not appear that D&W was paying money to Mr. Fernandez to settle a claim not covered by the terms of the Liberty insurance policy.[8] Furthermore, Liberty notes that D&W now is represented by Mr. Fernandez's counsel and that D&W had secretly agreed to pay Mr. Fernandez a large portion, i.e., $250,000.00, of any monies received by D&W from its bad faith action against Liberty.

       The court finds that if proven, these two affirmative defenses, without limitation, are valid defenses to D&W's action.  The facts alleged by Liberty are sufficient for it to take discovery into the areas of D&W's alleged voluntary payment made without the consent of Liberty and D&W's bad faith.  Because Liberty has shown that the depositions of Mr. Fernandez and his attorneys who negotiated the challenged settlement are relevant to Liberty's affirmative defenses, the court will permit the deposition of Mr. Fernandez to proceed.  In addition, Liberty may take the deposition of D&W's attorneys from the Underlying Action, Alan Milstein, Esquire and Edward Hovatter, Esquire, to explore this area of inquiry.  After those depositions are

---

[8] Under Pennsylvania law, an insurer has no duty to indemnify its insured to the extent that any amounts paid by the insured are in satisfaction of claims for punitive damages. TIG Ins. Co. v. Nobel Learning Communities, Inc., 2002 WL 1340332, at *15 (E.D. Pa. June 18, 2002).

concluded, should Liberty believe that it needs to obtain further information from Messrs. Lynam and Villari, it shall make a renewed application to the court.  The court defers ruling on this issue now since the information sought by Liberty may be available from other sources.

> 3.  **D&W's Motion to Compel Defendants to Produce Nancy Brown, Esquire for a Deposition (Doc. No. 16) and Liberty's Response (Doc. No. 26)**

For the reasons set forth below, D&W's Motion (Doc. No. 16) is **DENIED**. D&W seeks the deposition of Nancy Brown, Esquire who is an attorney for Liberty.  Ms. Brown responded to D&W's request for the litigation and claim files of the Fernandez matter after the Underlying Action settled in September 2013.  At oral argument on the discovery motions, counsel for D&W admitted that D&W sent its first letter to Liberty threatening a bad faith lawsuit in May, 2013.  (N.T., 1/14/15, at 16.)  It appears that Ms. Brown first had contact with this matter in approximately December 2013.  (Liberty's Resp. (Doc. No. 26) at 4.)  Upon receipt of D&W's request for the litigation and claim files, Ms. Brown sent those files to counsel at another office to consider the propriety of their production in light of the threats of a bad faith claim.  At that time, this action by Ms. Brown was reasonable because D&W already had sent a letter threatening a bad faith claim months earlier, in May 2013.  Also, at that time, D&W had retained Mr. Fernandez's prior counsel, Messrs. Lynam and Villari, to prosecute a bad faith claim against Liberty.

D&W alleges that Liberty acted in bad faith by obstructing D&W's ability to pursue its bad faith action against Liberty.  However, as detailed above, as of approximately February, 2014, D&W had obtained the litigation files of John Baginski, Esquire and David White, Esquire (which included much of Mr. Baginski's litigation file after the case was

17

transferred from Mr. Baginski to Mr. White).  As of approximately July 2014, D&W had obtained the claims file with certain redactions for privileged materials.  The court will deny this Motion to Compel Ms. Brown's deposition.  It is clear that by November 2013, and even as early as May 2013, D&W and Liberty were legal adversaries in a contemplated bad faith action by D&W.  It is true that bad faith is actionable regardless of whether it occurs "before, during or after litigation." O'Donnell v. Allstate Ins. Co., 734 A.2d 901, 906 (Pa. Super. Ct. 1999).  However, Pennsylvania courts have made it clear that an insured may not recover under Pennsylvania's bad faith statute "for discovery abuses by an insurer or its lawyer in defending a claim predicated on its alleged prior bad faith handling of an insurance claim." Id. at 908 (quoting Slater v. Liberty Mut. Ins. Co., 1999 WL 178367, at *2 (E.D. Pa. Mar. 30, 1999)).  See also W.V. Realty, Inc. v. Northern Ins. Co. of New York, 334 F.3d 306, 313 (3d Cir. 2003) (same); Slater, 1999 WL 178367, at *1-2 ("The court is confident that the legislature did not contemplate a potentially endless cycle of § 8371 suits, each based on alleged discovery abuses by the insurer in defending itself in the prior suit.").

    D&W's only claim alleged of post settlement bad faith conduct is Liberty's refusal to turn over its claim file after it was notified it may be sued for bad faith.  This is the nature of a discovery violation, which does not constitute bad faith under Pennsylvania law.

    **4.**  **D&W's Motion for Protective Order Pursuant to Federal Rule of Civil Procedure 26(c) (Doc. No. 18) and Liberty's Response (Doc. No. 27)**

    Liberty seeks to depose Alan Milstein, Esquire and Edward Hovatter, Esquire.  In this Motion, D&W does not contest the propriety of taking the depositions of these two attorneys, who represented D&W in the Underlying Action, but requests that these depositions be deferred

until the court rules on D&W's Motion to Compel (Doc. No. 14).  Since the court herein rules on D&W's Motion to Compel (Doc. No. 14), this Motion (Doc. No. 18) is **DENIED AS MOOT**.

     5.     **Liberty's Motion to Strike D&W's Discovery Motions (Doc. No. 19) and D&W's Response (Doc. No. 20)**

In this Motion, Liberty requests that D&W's discovery motions (Doc. Nos. 14, 15, 16 and 18) be stricken because of improper service and for failure of D&W to comply with applicable rules of both federal and local rule civil procedure.  The court denies this motion in the interests of judicial economy.  Because the discovery deadline expires the end of this month, the court has addressed the merits of the motions in order to expedite this matter.  Liberty's Motion (Doc. No. 19) is **DENIED**.

     6.     **D&W's Motion for Protective Order Pursuant to Federal Rule of Civil Procedure 26(c) (Doc. No. 21) and Liberty's Response (Doc. No. 30)**

In this Motion, D&W requests that Liberty's deposition of its corporate designee be deferred until the court rules on D&W's Motion to Compel (Doc. No. 14).  D&W does not contest the propriety of taking the deposition of its corporate designee.  Because the court herein rules on D&W's Motion to Compel (Doc. No. 14), this Motion (Doc. No. 21) is **DENIED AS MOOT**.

An appropriate Order follows.

BY THE COURT:

/s/ Thomas J. Rueter
THOMAS J. RUETER
United States Magistrate Judge